Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | William J. Hibbler | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 00 C 3848 | DATE | May 16, 2002 |
| CASE TITLE | May v. Pace Heritage Division | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendant's Motion for Summary Judgment (doc. #23)

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial [set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs [by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendant's motion for summary judgment (doc. #23) is **GRANTED**. All pending dates and motions are terminated as moot. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | | |
| | No notices required. | | | number of notices | |
| | Notices mailed by judge's staff. | | | MAY 17 2002 | |
| | Notified counsel by telephone. | | | date docketed | |
| ✓ | Docketing to mail notices. | | | | 31 |
| ✓ | Mail AO 450 form. | | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | | |
| JHC | courtroom deputy's initials | | 02 MAY 16 PM 5:01 | date mailed notice | |
| | | Date/time received in central Clerk's Office | | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



ANNIE EVA MAE MAY, )
    Plaintiff, )
) 
) CASE NO. 00 C 3848
v. )
) JUDGE WILLIAM J. HIBBLER
)
PACE HERITAGE DIVISION, )
    Defendant. )

## MEMORANDUM OPINION AND ORDER

Pending in this disability discrimination action is Defendant's motion for summary judgment. The Court has examined the submissions by the parties, and now determines that Plaintiff has not satisfied her threshold burden of establishing a prima facie case. Accordingly, summary judgment is granted in favor of Defendant.

### I. BACKGROUND

Plaintiff Annie Eva Mae May ("May") began her employment as a bus operator for Joliet Mass Transit District in May 1977. When Defendant Pace Heritage Division ("Pace") acquired Joliet Mass Transit District in 1990, May retained her employment as a bus operator (but now working for Pace) until her termination in March 1999.

During her tenure with Pace, May sustained several injuries in the course of her employment. In July 1997, May experienced pain in her right foot, resulting from extensive pressure caused by pushing down on the large brake and gas pedal of the bus. May received treatment for this injury and returned to work with no restrictions in August 1997. Shortly thereafter, in September 1997, May hurt her left shoulder as she was driving a Pace bus over some railroad tracks. May also received treatment for the shoulder injury before returning to work in December 1997.

Soon after May's return, however, she began incurring "missouts." According to Pace's written Missout Policy, a miss is defined as "an absence from duty for any reason that is not reported to the dispatcher thirty minutes before report time, and the employee shows up later or calls." Missouts are measured over a twelve-month period, with the first miss leading to a warning, the second, a suspension,

and the third, termination. When a miss occurs, the dispatcher is required to complete a missout violation form that documents the time the employee called in and the reason given for the miss. The form is then turned over to the Division Manager who fills out a Notice of Personnel Action (NOPA), determines the appropriate discipline, and meets with the employee to discuss the violation. The employee is allowed to have a union representative present during the meeting.

May's first miss occurred on January 13, 1998. According to the NOPA, May was scheduled to report for work and begin her bus run at 5:03 a.m., but she contacted dispatch at 5:34 a.m. and stated that she had overslept. Notwithstanding the fact that at the violation meeting May signed off on the NOPA setting forth the incident as described above, May now claims that she arrived at work on time but was unable to proceed with her scheduled run because the medication she was taking for her injured foot made her drowsy.

Less than one month later, on February 5, 1998, May incurred her second miss. Although May was scheduled to begin work at 5:15 a.m., she did not arrive until 6:10 a.m. May told the dispatcher that she thought she was scheduled for a different run that day and thus did not have to report until 6:10 a.m. In accordance with Pace's policy, May received a one-day suspension for the second missout.

Approximately six weeks later, on March 30, 1998, May was scheduled to begin work at 4:47 a.m. but according to Pace, did not show up at the dispatch window until 5:00 a.m., at which time she claimed to have been unaware that a new schedule was in place. Although it appears May reported for work within 30 minutes of her start time, Pace treated this incident as May's third miss. May does not specifically challenge the miss on that basis; instead she claims that she arrived at work on time and was waiting in the bus driver's room. In any event, since Pace believed May had incurred her third miss, it suspended her pending further investigation, and scheduled a violation meeting. At the meeting, May's union representative requested that in light of her lengthy employment history with Pace (and its predecessor) that she be given another chance. Pace agreed, in lieu of discharge, to keep May as an employee, but warned that she would be terminated immediately if she incurred any type of miss before January 13, 1999, the end of the twelve-month period. May signed the NOPA acknowledging the terms of the Last Chance Agreement.

Pace contends May incurred her fourth miss on September 18, 1998, when she was scheduled to begin work at 4:47 a.m. but, according to the missout violation form filled out by the dispatcher, called at 5:02 a.m. and stated that her alarm clock had been turned off by a family member. May denies the dispatcher's statement, claiming instead that she phoned at 4:20 a.m. Before a violation meeting could be scheduled, though, on September 21, 1998, May had foot surgery, and subsequently, on October 2, 1998, was granted medical leave under the Family Medical Leave Act retroactive to the date of her surgery. May underwent another surgery on November 20, 1998, this time on her left shoulder. While she was on medical leave, the Regional Division Manager evaluated the September 1998 incident and determined that it was a "miss" and therefore May should be terminated for violating Pace's Missout Policy, and the Last Chance Agreement. However, the Manager decided to wait until May returned from medical leave to end her employment.

On January 6, 1999, a Pace doctor concluded May could return to work and safely operate a bus. May contends her doctor never released her, though, but instructed her to continue with physical therapy on her foot and shoulder. Pace advised May to appear on March 4, 1999, with a union representative if she desired, for a meeting with management. May met with Pace as instructed, and was terminated for incurring her fourth miss.

May filed a charge with the EEOC and then this lawsuit against Pace, alleging discriminatory discharge and failure to accommodate. Pace now moves for summary judgment, contending May cannot establish that she is a qualified individual with a disability who was not provided a reasonable accommodation. May argues that genuine issues of material fact exist, and therefore summary judgment must be denied.

## II. STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). All facts and inferences are viewed in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Amadio v. Ford Motor Company*, 238 F.3d 919, 924 (7th Cir. 2001). However, the use of self-serving assertions,

without factual support in the record, will not defeat a motion for summary judgment. *James v. Sheahan*, 137 F.3d 1003, 1006 (7th Cir. 1998). Instead, the party opposing summary judgment must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250. Indeed, where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," there can be no genuine issue as to any material fact. *Celotex*, 477 U.S. at 322-23.

### III. ANALYSIS

The ADA states that "no covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to ... discharge of employees ..." 42 U.S.C. §12112(a). When there is no direct evidence of discrimination, a plaintiff must prove a prima facie case using the scheme from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Amadio*, 238 F.3d at 924. A prima facie case under the ADA is established when a plaintiff proves that: (1) he belongs to the protected group; (2) he performed his job satisfactorily; (3) he was subjected to an adverse employment action; and (4) similarly situated employees received more favorable treatment. *See id.* If May fails to prove any of these elements, she loses. *Id.* If, however, May succeeds in establishing a prima facie case, the burden then shifts to Pace to articulate a legitimate, nondiscriminatory reason for terminating her employment. *Id.* And if Pace clears that hurdle, it will be up to May to demonstrate that the reason offered by Pace is pretextual. *Id.*

Here Pace contends May cannot even meet her burden of establishing a prima facie case, particularly the first element of the test – that she belongs to a protected group covered by the ADA. Three factors must be satisfied if May is to be considered a member of the protected group: (1) she is disabled; (2) she has the ability to perform the essential functions of the employment position; and (3) if she is unable to perform the essential functions of her position without accommodation, there exists some reasonable accommodation that would allow her to so perform. *See id.* at 925.

*Disability*

May contends her foot and shoulder injuries prevent her from working and thus constitute "disabilities" under the ADA. A "disability" is defined as a physical impairment that "substantially limits

one or more ... major life activities. 42 U.S.C. § 12102 (2)(A); *Toyota Motor Manuf., Kentucky, Inc., v. Williams*, 534 U.S. 184, 122 S. Ct. 681, 689 (2002). In assessing whether those injuries qualify as a disability for purposes of the ADA, this Court asks three questions: (1) does May suffer from a physical or mental impairment: (2) has May identified an affected life activity that constitutes a "major life activity;" and (3) whether May's impairment substantially limits the identified major life activity. *See Bragdon v. Abbott*, 524 U.S. 624 (1998).

It is undisputed that May has a physical impairment, in that her foot and shoulder injuries adversely affect her musculoskeletal system. 29 C.F.R. § 1630.2(h)(1). Furthermore the ability to work qualifies as a major life activity. *See* 29 CFR § 1630(j)(3); *Murphy v. United Parcel Serv.*, 527 U.S. 516, 119 S.Ct. 2133, 2137 (1999). The decisive factor, then, is whether May has put forth evidence demonstrating that as a result of this impairment her employment prospects have been substantially limited. *See Bond v. Sheahan*, 152 F. Supp. 2d 1055, 1067 (N.D. Ill. 2001). "When referring to the major life activity of working, the EEOC defines 'substantially limits' as: 'significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average persons having comparable training, skills and abilities.'" *Murphy*, 119 S.Ct. at 2138, quoting 29 CFR § 1630(j)(3)(I). Therefore, to be considered substantially limited in the major life activity of working, May must be regarded as precluded from more than a particular job. *Murphy*, 119 S.Ct. at 2138.

May testified at her deposition that since her termination from Pace, she has applied for a variety of positions, including driving a truck, stocking merchandise at K-Mart, telephone solicitation, slot technician at casinos, and housekeeping, but was denied the jobs because her shoulder and foot injuries prevented her performing the requisite duties of each position. Thus May has arguably demonstrated that her impairment has substantially limited her ability to not only work as a bus operator, but also in other fields as well. Consequently, the Court finds a genuine issue of material fact likely exists as to whether May is in fact disabled.

*Qualified Individual with a Disability*

Nevertheless, May must also show that she is a qualified individual, meaning that, with or without reasonable accommodation, she could still perform the essential functions of the bus operator position.

*Amadio*, 238 F.3d at 927. Pace points to May's alleged failures to report to work on time or at all as evidence that she could not perform an essential function of her job. The Seventh Circuit has recognized work attendance as an essential requirement of employment in cases involving a clerical worker, *Vande Zande v. Wis. Dep't of Admin.*, 44 F.3d 538, 544 (7th Cir. 1995), teacher, *Nowak v. St. Rita High Sch.*, 142 F.3d 999 (7th Cir. 1998), account representative, *Corder v. Lucent Tech., Inc.*, 162 F.3d 924 (7th Cir. 1998), production employee, *Waggoner v. Olin Corp.*, 169 F.3d 481 (7th Cir. 1999), and, most recently, an assembly line worker, *Amadio*, 238 F.3d at 928.

May's position as a bus operator is akin to the positions listed above in that they cannot be completed without the employee actually showing up to work. Indeed, the bus operator job description, which states that the function of the job is to "transport passengers on a pre-determined route in a safe, timely and courteous manner," reinforces this Court's belief that a good attendance record is necessary. Bus operators who do not show up to work, or get there late, simply cannot transport passengers in a timely manner. Therefore, attendance is an essential function of the bus operator position.

May's attendance record does not meet the requirements of the position she held. Pace's written attendance policy allowed employees to incur no more than three misses in a twelve month period. Pace contends it generously gave May another chance to keep her job, even after she violated the Missout Policy by incurring a third miss in March 1998, but May blew that final opportunity with a miss in September 1998. Although May now challenges Pace's contention that she incurred any of the misses, she provides no supporting documentation to back up her statements. For instance, May says she actually arrived at work on time on January 13, 1998 (the first miss), but fails to explain why she signed a NOPA stating that she was late because she overslept. Thus, this Court need not credit May's self-serving and contradictory statement. As for the February 5, 1998 incident (the second miss), May does not dispute the fact that she reported for work almost one hour later than scheduled, but nonetheless maintains it does not count as a miss because she mistakenly thought she was driving a later run. But May's argument runs counter to the express language in the Missout Policy defining a miss as an absence from duty *for any reason*. Her good faith belief that she was on time is therefore irrelevant.

Finally, concerning the alleged third and fourth misses on March 30, 1998, and September 18,

1998, respectively, May claims she arrived on time, even though the missout violation form filled out by the dispatcher says otherwise. Citing to her deposition testimony given in August 2001 as proof that she did not incur misses three and four, May contends a triable issue of fact exists. But the mere existence of a factual dispute is not enough to defeat a motion for summary judgment. Rather, the Court must find the factual dispute is "genuine," meaning that "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 247. When measured against that standard, May's attempt to demonstrate a genuine issue of material fact clearly falls short. Even if May was unaware of Pace's policy that the third miss could result in termination, she certainly knew, by virtue of having signed off on the NOPA, that if she incurred a fourth miss, Pace would fire her. It would seem only logical, then, for May to ensure that she either communicated clearly to Pace or made sure that her personnel record so reflected, the defenses proffered at her deposition. But May points to no other corroborating evidence to rebut the facts set forth in the missout violation forms submitted by Pace. Consequently, this Court finds it inconceivable that a jury would credit May's stale testimony given almost three years after the alleged misses that she, in fact, reported for work on those particular days at the scheduled time.

May therefore has not established that she met an essential requirement of the bus operation position, namely attendance. As such, she cannot be considered a qualified individual with a disability for purposes of the ADA.

### *Reasonable Accommodation*

Nonetheless, where it has been determined that a disabled employee cannot perform the essential functions of a job, the Court must consider whether any reasonable accommodation would help. *Amadio*, 238 F.3d at 928. Reasonable accommodations may include "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, . . . other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9)(B). "However, if an accommodation 'would impose an undue hardship' on the operation of the employer's business, the accommodation need not be made." 42 U.S.C. §12112(b)(5)(A).

May first argues that Pace could have accommodated her disability by granting additional medical

leave so that she could fully recover from her injuries. May claims that her doctor had not yet released her when she went back to Pace in March 1999 (even though Pace's doctor had given her a clean bill of health in January 1999), but she provides no proof that she ever conveyed any such message to Pace. More significantly, though, even if May actually sought an extension of her leave time following the January 1999 release, the request came too late. By then, the September 1998 incident that precipitated May's termination had already occurred, and the November 1998 decision to terminate May had already been made. An accommodation in the form of additional leave time, therefore, would not have led to May retaining the bus operator position, but rather would have only further postponed the inevitable, her termination.

Next May contends Pace should have transferred her to a dispatch position as a reasonable accommodation of her disability. However, "an employer is not required to give a disabled employee preferential treatment, as by giving her a job for which another employee is better qualified . . . or by waiving his normal requirements for the job in question." *Williams v. United Ins. Co. of America.*, 253 F.3d 280, 282 (7th Cir. 2001). May therefore must demonstrate that Pace had a vacant dispatch position for which she was qualified. *Ozlowski v. Henderson*, 237 F.3d 837, 840 (7th Cir. 2001). Whether any vacant dispatch positions existed at the time May inquired about other jobs with Pace is a disputed issue. But even if there was an opening, May was not qualified to fill the dispatch position since it required a good attendance record for the previous 12-month period, something May, as this Court has already indicated, did not have. Pace, therefore, was not obligated to place May in such a position in order to accommodate her disability.

## IV. CONCLUSION

May has not produced enough evidence to satisfy her burden of establishing the first prong of her prima facie case, namely that she belongs to the protected group. Therefore this Court need not proceed any further with the *McDonnell Douglas* analysis. Pace is entitled to summary judgment on May's claims.

IT IS SO ORDERED.

*/s/ Wm. J. Hibbler*
WILLIAM J. HIBBLER, DISTRICT JUDGE

DATED: May 16, 2002